PICKERING *v.* SUNNYLAND DRILLING CO., et al.

No. 42087        February 5, 1962        137 So. 2d 176

*Alonzo H. Sturgeon, Robert L. Netterville,* Natchez; *J. A. Travis, Jr.,* Jackson, for appellant.

*Daniel, Coker & Horton,* Jackson, for appellees.

McGEHEE, C. J.

On August 4 or 5, 1955, the appellant, Walter F. Pickering sustained an injury in the course of and arising out of his employment with the Sunnyland Drilling Company. He received temporary total disability compensation for a period of eight weeks thereafter and later received permanent partial disability benefits for the thirty-week period prescribed by the Workmen's Compensation Law on account of the loss of the distal joint of the left thumb. After the lapse of five years or more, he filed this claim in the early part of 1960, for compensation for a back injury. The claim for compensation on account of his alleged back injury was denied by the attorney-referee, affirmed by the full commission, and on appeal to the circuit court, the decision of the Workmen's Compensation Commission was affirmed. The appeal to this Court is from the action of the Circuit Court of Jefferson County in affirming the decision of the Commission.

The claimant testified that while he was on a drilling rig at work for the Sunnyland Drilling Company on or about August 5, 1955, the safety chain on the tongs broke and spun him around, throwing him on his hip; and that the chain caught and injured his thumb, his hip and

his back. After this injury the first joint of the claimant's thumb was amputated and he remained in the Natchez General Hospital for about two weeks. Thereafter he claims that he had not been able to keep a steady job because of his back injury, but he admitted on cross-examination that thereafter over the period of five years he had worked for the following drilling companies in Mississippi and Louisiana, to-wit: Jet Drilling Company; John W. Mecon Drilling Company, Norton Drilling Company, Salt Dome Drilling Company, Circle Drilling Company, Buster Gardner Drilling Company, Continental Shell Drilling Company, and the Service Contracting Company, Inc., and that he has also worked during said period of time in a supermarket, and for a truck line and also as a roustabout.

The claimant testified that following the injury of August 5, 1955, he was discharged as being ready to return to work by Dr. Read, the assistant of Dr. G. S. Hicks; that he requested further examination and was sent to Dr. George Purvis, an orthopedic surgeon in Jackson, Mississippi. He admitted that during the five-year period intervening between the injury of August 5, 1955, and the filing of his claim for the back injury during the early part of 1960, he had not gone to the doctor for any reason other than for a non-related foot injury.

Appellant's wife to whom he was married on December 24, 1957, testified on behalf on the complainant and she said that her husband complained to her several times that his back was hurting him. She admitted that during the periods of when her husband wouldn't be working he didn't go to a doctor, but that during these periods he would be looking for another job.

Dr. G. S. Hicks was called as a witness by the claimant and he testified that he was actually not the treating doctor at the time of the injury but that his associate, Dr. Read, had treated the claimant. Dr. Hicks had not

examined the appellant but had talked to him within a few days prior to the hearing when the claimant related a history of complaints of the alleged back injury. Dr. Hicks testified that from his examination of the clinical records relating to the 1955 treatment and other pertinent hospital records that the claimant "did not have a back injury to start with", but that he had contusions of the pelvis instead of a fractured pelvis. This doctor also testified that if the claimant had any back injury at the time of his 1955 hospitalization and treatment it should have revealed itself during the period of such hospitalization. The final medical report of Dr. Read rendered in October 1955, showed that the claimant was discharged to return to work with the only permanent disability of any kind being the loss of the distal two-thirds phalanx of the left thumb. Dr. Hicks testified that if an examination were done now it would be impossible for a doctor to know when the back got in the condition that produced the complaints and that during the entire period of medical observation following the injury no evidence of any back injury was revealed by the records. The report of Dr. Purvis, who examined the claimant on October 24, 1955, clearly revealed that a complete orthopedic and x-ray examination disclosed no orthopedic abnormalities except the amputation of the left thumb at the mid-portion of the distal phalanx, and there was no other evidence of permanent disability. Dr. Purvis thought that the appellant should be able to return to his usual occupation.

The claimant asked that the claim be reopened; a hearing was had before the attorney-referee thereon and he then sustained the motion of the employer and carrier to dismiss the petition. The Commission and the circuit court both affirmed.

On direct examination Dr. Hicks was asked the following questions and gave the following answers, to-wit:

"Q. Now, Doctor, from that history you had, were you able to arrive at any disgnosis or not?

A. No.

Q. What would you have to have before you could render a reasonable evaluation of his case and arrive at an opinion?

A. Well, we would have to have him under observation for a few days, and get some X-rays of his lower back and pelvis, and possibly a myelogram.

Q. Would this require hospitalization?

A. Yes."

It is the position of the claimant that the attorney-referee should have reopened the claim so that Dr. Hicks could observe and examine the patient and report his findings and that the claimant was unable to pay the expense of such hospitalization and examination himself. The attorney-referee and the Commission evidently did not believe that if the claimant had sustained the back injury that he complained of that he would have been able to have worked at the same type of work at eight different drilling companies and have performed the manual labor for the other employers without having ever consulted a doctor about his back injury, and the attorney-referee and Commission evidently believed the testimony of Dr. Hicks, who was introduced by the claimant, that if the claimant had sustained the back injury complained of, it would have been revealed during the course of his treatment during the weeks following the injury of August 5, 1955.

It is a rare case where the decisions of the attorney-referee, the Commission and the circuit court are all overturned on appeal.

■■ ■ We are unable to say in the instant case that the finding of the attorney-referee, which was affirmed by the Commission, is not supported by substantial evidence and we must therefore affirm the judgment of

the circuit court here appealed from, which affirmed the decision of the Commission.

Affirmed.

*Ethridge, Gillespie, Rodgers,* and *Jones, JJ.,* concur.